IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| ROBERT L. CARTER, | ) |
| Plaintiff, | ) ) ) ) Case No. |
| vs. | ) ) |
| STEPHEN J. DE ZEEUW, | ) ) |
| Defendant. | ) |

## COMPLAINT SEEKING RECOVERY OF DAMAGES

**COMES** now, Plaintiff, Robert L. Carter, through his attorney, William J. Fleischaker, and in support of this cause of action states as follows:

1. Plaintiff is a resident of Jasper County, Missouri in the Western District of Missouri, Southwestern Division.

2. Plaintiff brings this action for recovery of damages as a result of Defendant's actions further described herein which deprived Plaintiff of rights protected by the 5th, 8th, and 14th amendments to the Constitution of the United States of America.

3. This action seeks damages pursuant to the principles set forth by the *United States Supreme Court in Bivens v. 6 Unknown Named Agents of the Federal Bureau of Narcotics*, 403 US 388 (1971).

4. This court has jurisdiction pursuant to 28 USC §1331 because it involves a federal question.

5. Defendant, Steven J. DeZeeuw is an employee of the United States Food and Drug Administration office of criminal investigations and all actions and conduct of Defendant, Stephen J. DeZeeuw set out in this complaint was acting under federal law.

6. Plaintiff is a medical doctor who at all times relevant to the issues herein was licensed to practice medicine in the state of Missouri.

7. Plaintiff is a board certified physician and when he was practicing medicine, specialized in treating patients with various forms of cancer.

8. Plaintiff's treatment of his patients included the administration of chemotherapy drugs.

9. Plaintiff's medical practice was located at 1617 W. 26th St., Joplin, Missouri and it was at this location where he administered chemotherapy treatments to his patients.

10. Prior to April of 2010 and as a result of price fixing by various pharmaceutical manufacturers, the cost of chemotherapy drugs administered to his patients by plaintiff began to increase substantially.

11. Even though the cost of chemotherapy drugs began to increase, the amounts allowed by private insurance companies and Medicare for reimbursements to physicians for administering chemotherapy treatment remained stable.

12. As a result of the increase in the cost of chemotherapy drugs and the lack of the increase in the amounts of reimbursements allowed by Medicare and other insurance companies for administering the treatment, it became virtually impossible for Plaintiff to operate his clinic for the treatment of patients and generate sufficient revenues to cover the costs of operations.

13. In approximately February of 2010, Plaintiff, while attending a medical conference, was advised by another oncologist that he could purchase the same chemotherapy drugs he

was currently using to treat his patients from a distributer in Canada at prices that were less than those available from the major pharmaceutical manufacturers in the United States.

14. Upon further investigation, Plaintiff determined that the drugs being provided by the Canadian supplier were chemically identical to the drugs being supplied by manufacturers located in the United States.

15. Thereafter, Plaintiff began purchasing chemotherapy treatment drugs through QSP (Quality Special Products) in Winnipeg, Canada.

16. At no time until after May 22nd, 2011, was Plaintiff aware that the use of drugs provided by a supplier located outside the United States was prohibited.

17. On May 22nd, 2011, Plaintiff's medical practice was destroyed by a tornado which caused great devastation throughout the Joplin, Missouri area.

18. Thereafter, Plaintiff ceased practicing medicine and never again purchased or administered chemotherapy medications.

19. Subsequent to January 31st, 2012, Defendant met with Plaintiff at his office located in Carthage in Jasper County, Missouri.

20. At no time did Defendant advise Plaintiff that he was investigating Defendant for possible criminal violations of the law.

21. Plaintiff freely and voluntarily provided Defendant information pertaining to his practice, his use of chemotherapy drugs and gave Defendant access to what was left of his office computers.

22. Thereafter, Defendant acting in his capacity as an investigator employed by the United States of America provided the results of his investigation to officials in the United States Department of Justice.

23. In his report to the United States Department of Justice, Defendant advised officials that Plaintiff had purchased over $300,000.00 of products from QSP in May and June of 2011.

24. When interviewing Plaintiff, Defendant was made aware of the fact that Plaintiff's medical practice was destroyed on May 22nd, 2011 and that thereafter, he never purchased or administered chemotherapy drugs.

25. In his reports to individuals at the justice department, Defendant either withheld information or failed to advise that Defendant could not have possibly purchased or administered drugs after May of 2011 due to the destruction of his practice.

26. In approximately August of 2012, Plaintiff was notified by the Food and Drug Administration that it was unlawful for him to be administering non-FDA approved medications.

27. This was the first time Plaintiff became aware that there was anything improper about purchasing chemotherapy drugs through QSP.

28. In response, Plaintiff advised the Food and Drug Administration that he had closed his practice after the tornado of May 22nd, 2011 and he was no longer purchasing or administering chemotherapy drugs.

29. In early March of 2015, Plaintiff was notified by the United States Attorney's office for the Western District of Missouri that he was a target of investigation for criminal activity arising out of his use of the medications purchased from QSP.

30. As a result of the investigation preformed by Defendant, Plaintiff was advised by the US Attorney's office that he either had to enter a plea of guilty to a misdemeanor and agree to pay a forfeiture of $1,200,000.00 and restitution in an amount of $971,854.32 or he would be indicted for a felony.

31. Plaintiff was advised by representatives of the United States Attorney's office that he only had 10 days, later extended to 14 days to agree to accept the offer or face a felony indictment.

32. Because of the limited period of time to respond to the plea offer and because he did not have access to his financial records, Plaintiff had no opportunity to investigate the validity of the forfeiture and restitution amounts demanded by the United States Attorney's office.

33. The restitution and penalty amount demanded by the United States Attorney's office were calculated using the information furnished by Defendant to the office.

34. As a result of the Defendant's inclusion of amounts allegedly paid by Plaintiff for purchases after May 22nd, 2011, the US Attorney's office demanded forfeiture and restitution that was approximately $600,000.00 more than the actual purchases of pharmaceuticals from QSP by Plaintiff.

35. Defendant's inclusion in his report of information alleging that Plaintiff made purchases of misbranded pharmaceuticals after May 22nd, 2011, violated Plaintiff's right to be free from excessive fines as guaranteed by the Eighth Amendment to the Constitution of the United States.

36. Defendant's inclusion in his report of information alleging that Plaintiff made purchases of misbranded pharmaceuticals after May 22nd, 2011, was evidence material to the

punishment of Plaintiff and his failure to include information that Plaintiff could not have purchased or administered drugs purchased from QSP after May 22nd, 2011 was evidence withheld in violation to Plaintiff's rights to due process of law under the 5th and 14th amendments to the Constitution of the United States of America and in violation of *Brady v. Maryland.*

37. As a result of the foregoing, Plaintiff has been damaged in an approximate amount of $600,000.00.

38. As a further result of the foregoing, Plaintiff has been prevented from engaging in the practice of medicine and has been stripped of Board Certifications and has suffered emotionally.

39. In addition to the above damages, Plaintiff is entitled to recover his legal fees and expenses incurred in bringing this action.

40. There is no statute or regulation of the United States by which Plaintiff can obtain the relief sought herein.

41. Plaintiff demands trial by jury of all issues herein triable to a jury.

WHEREFORE, Plaintiff prays Judgment in his favor against Defendant for $600,000.00 plus court costs and his attorney's fees incurred in this action.

> FLEISCHAKER & WILLIAMS
>
> By: /s/ William J. Fleischaker
>   William J. Fleischaker
>   Missouri Bar No. 22600
>   P. O. Box 996
>   Joplin, Missouri  64802
>   417-623-2865
>    417-623-2868 FAX
>   bill@ozarklaw.com
>   ATTORNEYS FOR PLAINTIFF